CHAMBERS v. BROWN.

1. **Practice on Appeal:** EVIDENCE TO SUPPORT VERDICT. There being
   evidence in this case from which the jury might, in the exercise of a
   sound, honest and intelligent discretion, have arrived at the verdict for
   plaintiff, this court cannot interfere therewith.

2. **Lease of Coal Land:** BREACH BY LESSOR: MEASURE OF DAMAGES:
   SPECULATIVE PROFITS. Defendant, for an executed consideration, had
   agreed to lease to plaintiff certain coal lands for twenty years, but he
   refused to execute the lease. *Held* that plaintiff was entitled to recover
   the value of the privilege or right he held under the contract with
   defendant, which should be determined in view of the quantity of coal
   or thickness of veins, its depth below the surface, the amount of royalty
   to be paid, and all other matters tending to show the value of plaintiff's
   right to mine under the contract; but in the application of the rule
   there must not be a speculative estimate of profits, reached by the exer-
   cise of the imagination rather than by reasoning based upon facts.

3. ———: ———: ———: EXPERT TESTIMONY. In such case the opinions
   of experienced operators of coal mines were admissible to prove the
   value of plaintiff's right.

4. **Contract**: EVIDENCE: PAROL TO VARY WRITING., Where a written contract purports to be made by one of the parties for himself alone, parol testimony is not admissible to show that it was understood that another was to be interested with him.

*Appeal from Polk Circuit Court.*

FRIDAY, JUNE 18.

ACTION at law to recover damages sustained by plaintiff by reason of defendant's violation of and refusal to perform a written contract to enter into a lease of certain coal lands for mining purposes. There was a judgment upon a verdict for plaintiff. Defendant appeals.

*Nourse, Kauffman & Guernsey*, for appellant.

*Parsons, Perry & Sherman*, for appellee.

BECK, J.—I. ·Defendant owned certain lands near the city of Des Moines, which it was believed were underlaid with coal in sufficient quantity to make its mining profitable. He entered into a contract with plaintiff, expressed in a written instrument, in the following language:

"DES MOINES, IOWA, December 14, 1883.

"*E. W. Chambers, Esq., City*—DEAR SIR: You can prospect my land in southeast quarter of section 12, 78, 25, the same being one hundred (100) acres, more or less; and if you find coal that justifies putting a shaft down, I will, upon your request, execute to you ·a lease, giving you the exclusive right to mine the same for the next twenty (20) years, at a royalty of one-half cent per bushel for all coal mined, except the slack. You are to commence prospecting during the present month, and to put down a shaft of reasonable dimensions and capacity before the first day of November next. You are to guaranty a royalty of $1,500 per year, or surrender your lease.

"Very truly yours,                    T. E. BROWN.

"P. S. Another lease will be made on my other adjoining lands on the some basis, should Mr. Chambers prospect and desire to put a shaft down; and in either or both leases he is to have a reasonable amount of the surface for the purposes of operating his business of mining and shipping coal. Prospecting to be done, and shaft put down, within one year.

"T. E. Brown.

*"Twenty-seventh December,* 1883."

After the execution and delivery of the instrument to plaintiff, he proceeded to explore and "prospect" for coal upon the land, by boring in the usual manner. Coal was discovered in quantities which would render mining profitable. The "prospecting" was done within the time prescribed in the instrument; but, before the time allowed for putting down a shaft, defendant leased the land to another, or otherwise conferred the right to mine the coal upon other parties. Plaintiff went upon the land to begin work in sinking the shaft, but he and his hands were compelled to leave it by defendant. He also made a demand of defendant for a lease, in pursuance of the written instrument executed by defendant above set out. Defendant refused to execute the lease, or to permit plaintiff to sink a shaft for mining. Plaintiff seeks in this action to recover the damages he has sustained by reason of the failure and refusal of defendant to perform his obligations expressed in the contract with plaintiff.

The defendant in his answer admits the execution of the instrument which is the basis of the action, but, as defenses thereto, alleges that one Miller was intended to be a party to the contract with plaintiff, and equally interested therein, and is therefore a necessary party to this suit. The answer admits that plaintiff and Miller did proceed to "prospect" for and "partially develop" the coal, but, failing to find it in sufficient quantity, did abandon the enterprise, and thereby released defendant of all obligation to execute a

lease.  It is also alleged that, after plaintiff and Miller had abandoned the lands, defendant permitted other persons to develop the mines, who found coal upon the land in quantities justifying the prosecution of mining thereon.

II.  We will proceed to the consideration of the objections to the judgment of the circuit court in the order of

1. PRACTICE on appeal: evidence to support verdict.

their discussion by defendant's counsel.  It is first insisted that the court below erred in refusing to set aside the verdict of the jury on the ground that it is not supported by the evidence.  This objection is based upon the claim that the evidence shows that plaintiff abandoned the contract with defendant, and declared that he did abandon it, and did inform defendant and the other witnesses that he had done so, or intended to do so. The case is one of conflict of evidence, with the strong preponderance in favor of defendant,—three witnesses against one.  But it cannot be claimed, and we do not understand counsel for defendant to claim, that there is no evidence to support the findings of the jury to the effect that there was no abandonment on the part of plaintiff.  It rested with the jury to settle this conflict of evidence, and we cannot say that there was an abuse of sound, honest and intelligent discretion in accepting the evidence of plaintiff as against the contradictory evidence.  It may be remarked that there are matters which tend to support plaintiff's testimony.  One only need be mentioned: Plaintiff had employed Miller to sink certain prospecting holes upon the land, and had advanced certain sums of money as the work was progressing, but not enough to fully pay for it.  Defendant had paid to Miller, or to others, money to be used in payment of the work, and there was probably certain indebtedness for the work remaining unpaid.  It must be remembered that this work, if abandoned by plaintiff, would result to the benefit of defendant, and that he did in fact receive the benefit of the work.  Miller appears to have been employed by defendant, who, after plaintiff was superseded, continued to pros-

ecute the work of developing the coal. While defendant and his two witnesses testify to plaintiff's declarations of his intention to abandon the work, none of them intimate that defendant or Miller assented to it; but, on the contrary, they seem to have objected to the proposed action of plaintiff, and pressed him for payment of the amounts due for the work, which was for the benefit of defendant. Surely, if plaintiff had proposed to withdraw from the work, something would have been said or done in regard to the money he had advanced, and the other parties would not have pressed him to make payments for the work from which he would have received no benefit.

III. Counsel for defendant insist that the court erred in its directions to the jury touching the measure of plaintiff's

2. LEASE of coal land: breach by lessor: measure of damages: speculative profits. damages, which were to the effect that he is entitled to recover the value of the privilege or right he held under the contract with defendant, which should be determined in view of the quantity of coal or thickness of the veins; its depth below the surface, the amount of the royalty to be paid, and all other matters tending to show the value of plaintiff's right to mine under the contract. In our opinion, the rule of damage announced by the circuit court is correct. Under defendant's offer to lease the land after explorations should have revealed the existence of coal, plaintiff, upon accepting it, had a property right in the coal or mine in accord with the contract. This right he could enforce against defendant, either by specifically enforcing the contract, or by the recovering of damages for its breach. Plaintiff did accept defendant's offer. After the discovery of the coal he demanded the execution of the lease, and permission to go on in the enterprise of mining. In an action for damages for the non-performance of defendant's contract, plaintiff is entitled to recover the value of the property right in the coal which he held under the contract. That value depended upon the conditions specified in the court's instructions.

Counsel for defendant insist that, as plaintiff held nothing more than a mere license to explore the land or mine coal, he could recover, in case of its revocation, nothing more than the amount he had expended in the work on the land. But, as we have seen, plaintiff had something more than a lease, —he had a right to mine coal for twenty years, which could only be terminated by defendant by the breach of his contract, and the deprivation of a property right held by plaintiff.

IV. To determine the value of plaintiff's right, and the damages resulting from its deprivation, estimates based upon the facts disclosed in the evidence must be made. The quantity of coal on the land, the costs of mining it, the royalty to be paid, and all other matters in evidence bearing upon the questions, should be considered. This does not require the estimation of profits; nor are the damages determined in this way,—ascertained by mere speculation; the exercise of imagination, rather than reason based upon facts. It is true that these damages may not be ascertained with certainty, but the law will be satisfied with reasonable approximation to such results as may be reached upon due consideration of all the facts of the case.

THE SAME.

V. The court directed the jury to consider the opinion of witnesses touching the value of plaintiff's right. A farmer would be able to estimate the value of a crop of corn, or the value of a lease upon a farm to run for twenty years, and a lumberman could estimate the value of the timber upon a tract of land. Surely, an operator in coal mines, knowing the thickness of a vein of coal, its convenience to transportation and to market, and the like, could approximately estimate the value of a lease of the land for mining purposes. In our opinion, these elementary principles sufficiently sustains the court's instructions, which were in accord therewith, upon the question of damages.

3. —— : ——: expert testimony.

VI. The defendant offered evidence to show that it was

understood by the parties at the time the contract was signed by defendant that Miller was to be interested in it as a partner of plaintiff's. The instrument speaks for itself, and cannot be altered or changed by evidence of prior or contemporaneous oral agreement or understanding. By the contract, plaintiff is alone interested on his side thereof. It is very plain that oral evidence showing that Miller was a party to the contract would change or vary it. This the law will not permit. It is not the case of the acquisition of an interest by Miller after his contract was executed by defendant, but a claim that Miller, all the time, was one of the contracting parties. This directly varies the contract, and parol evidence to that effect is not competent. It was rightly excluded by the circuit court.

*4. CONTRACT: evidence: parol to vary writing.*

VII. Two instructions as to the preponderance of the evidence and the burden of proof are complained of, on the ground that they are not relevant to the facts of the case. It is not claimed that they are incorrect as rules of law. We cannot concur in defendant's objection. There was such a conflict of evidence as demanded directions given by the court as to what constitutes preponderance of evidence. The instruction as to the burden of proof was applicable to evidence given by plaintiff as well as by defendant. We think there is no error in the instructions.

We have considered all the questions presented in the case, and reach the conclusion that the judgment of the circuit court ought to be

AFFIRMED.