THE SILVER SPRINGS, OCALA AND GULF RAILROAD COMPANY, A CORPORATION UNDER THE LAWS OF FLORIDA, PLAINTIFF IN ERROR, VS. M. V. B. VAN NESS AND ANNIE L. VAN NESS, DEFENDANTS IN ERROR.

1. A defect in the service of a summons ad respondendum or the sheriff's return thereon constitutes no ground for quashing the summons or abating the suit.

2. A declaration against the railroad company alleging that plaintiffs conveyed to defendant a right of way across certain land upon which it constructed and was then operating its railroad, that knowing there were valuable deposits of phosphate in and upon said right of way the defendant at the time of and in and by said conveyance

stipulated, promised and agreed, that when plaintiffs desired to mine and remove said deposits it would upon sixty days' written notice remove its railroad track to adjacent or joining lands; that thereafter plaintiffs gave defendant the sixty days' written notice stating that they desired to commence mining at the expiration of said period; that defendant neglected and refused, and still neglects and refuses, to remove its railroad or any part of same from said strip or any part of said land; that by reason of the breach of said promise plaintiffs had been hindered, obstructed and deprived of the use, enjoyment and profits of the land and hindered, delayed and obstructed in mining and removing from said land the valuable phosphate rock deposited therein, states a cause of action for damages consequent upon breach of defendant's agreement to remove its track, and it is not necessary to allege the amount of phosphate which plaintiffs were prevented from mining, nor that it was possible for defendant to comply with the written notice alleged, nor is the alleged notice insufficient for failure to designate a place to which the track could be removed.

3. When the grantee accepts a deed and enters into possession of the land conveyed, he is deemed by such acts to have expressly agreed to do what it is stipulated in the deed he should do, even though he did not sign the deed, and trial courts may in proper cases so instruct the jury.

4. Where the language used in a deed is ambiguous and may import either a condition subsequent or a covenant, it will be construed to be the latter in preference to the former, and in determining whether a particular provision is a condition subsequent or a covenant the entire instrument and the object and purpose of the grant will be looked to in order to ascertain the real interest of the parties, and the instrument will be construed most favorably to the grantee, so as to avoid a forfeiture of the estate granted.

5. Where one sells a railroad right of way, or a parcel of land reserving the minerals, with a reservation of the right to mine, the latter right must be so exercised as not to undermine the surface support or let down the tracks, unless

Silv. Sp'gs, Ocala & G. R. R. Co. v. Van Ness—Syllabus.

that right is reserved by express words or by necessary
implication. The court must be able to see clearly from
the language used that the right reserved was to extend
to letting down the road or undermining the surface sup-
port, before the reservation will be construed as author-
izing that to be done.

6. A deed conveying a right of way to a railroad company con-
tained, immediately following the description of the prop-
erty, a clause as follows: "Provided that should there be
valuable phosphate beds or deposits along the aforesaid
located line of survey, and the first party desire to mine,
operate and remove said deposits of phosphate, then the
said party of the second part shall upon sixty days' prior
notice in writing remove said track of railroad to adjacent
or adjoining lands, and the said second party shall have
the right to change such track of railroad to original line
after aforesaid deposits of phosphate shall have been re-
moved." The deed also contained a covenant on the part
of the grantors not in any manner to disturb, hinder or
molest the company in the use and enjoyment of its right
of way, and a proviso at the end of the deed to the effect
that if the company should not within six months grade
and tie its railroad over and across the land, then the
conveyance should be wholly void and of no effect. The
deed contained no clause declaring a forfeiture, nor right
of re-entry or possession in the grantors, nor right to mine
regardless of the railroad tracks, upon failure to remove
the tracks upon notice: Held, that the proviso quoted
was neither a reservation, limitation or condition subse-
quent, but merely a covenant or promise on the part of
the railroad company to remove its tracks upon the con-
ditions named, for breach of which an action for damages
lies. (TAYLOR, C. J., and MAXWELL J. dissenting.)

7. A written notice to a railroad company "to remove the track
of said railroad from the phosphate deposits (for the pur-
pose of mining the same) where they occur in the lands
enumerated and described in a certain right of way deed,"
particularly described, is a sufficient notice under a clause

35

in said right of way deed to the effect that should there be valuable phosphate beds or deposits along the right of way granted and the grantors desired to mine, operate and remove same, then the railroad company should upon sixty days' prior notice in writing remove said track of railroad to adjacent or adjoining lands, where the company upon receipt of such notice sent an agent to see the party giving it about it; never requested a more specific one; and never claimed to have been ignorant of the precise location of the phosphate deposits which the grantors desired to mine. (TAYLOR, C. J., dissenting.)

8. Where a cause is heard in the Supreme Court upon abstracts of the record, and the bill of exceptions as abstracted fails to set forth such brief statements of the proofs as are necessary to show the propriety or impropriety of rulings admitting evidence as required by the rules of court, or fails to show that the matters of fact asserted as objections to the admission of such evidence are true, the Supreme Court can not declare the trial court in error in admitting such evidence.

9. Where a cause is heard in the Supreme Court upon abstracts of the record, and the bill of exceptions as abstracted fails to set forth a statement of the facts upon which instructions refused were predicated as required by the rules of the court, the Supreme Court can not declare the trial court in error in refusing such instructions.

10. Instructions to the effect that when two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things from such breach of contract itself or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of such breach of it; that the party which is in default, that is the party who has broken the contract, should make good the damages sustained by his breach of contract which were

Silv. Sp'gs, Ocala & G. R. R. Co. v. Van Ness—Syllabus.

contemplated, or might reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract; and that gains prevented as well as losses sustained may be recovered as damages for breach of a contract, when they can be rendered reasonably certain by evidence and have naturally resulted from breach of contract, assert elementary principles of law and are properly given where warranted by the evidence.

11. Where a bill of exceptions is deficient in showing facts required to be shown by it, the defect can not be aided by reference to the evidentiary bill.

12. Where husband and wife, grantors in a right of way deed containing a promise on the part of the grantee railway company upon notice to remove its track from phosphate deposits upon its right of way to enable the grantors to mine same, brought suit for breach of such covenant, and it developed in the evidence that the wife had no interest in the land other than a right of dower, but no issue was made as to her right to recover as a joint plaintiff, the court properly entered judgment upon the verdict in favor of the husband and wife jointly.

13. The measure of damages for breach of an agreement on the part of a railroad company to whom a right ef way has been granted, to remove its track of railroad to adjacent or adjoining lands upon written notice in case valuable phosphate beds or deposits should be found to lie along said right of way and the grantors should desire to operate, mine and remove same, is the value of the phosphate that could be not mined without letting down the tracks or injury to the surface of the right of way.

14. Testimony proving a system of rodding, boring, pitting and excavating sufficiently thorough for a reliable estimate as to the amount of phosphate in beds upon a railroad right of way 100 feet wide, is not too loose, indefinite and uncertain to form the basis for an award of damages for the value of the phosphate in such beds.

15. Evidence examined and found sufficient to support the verdict. (TAYLOR, C. J. and MAXWELL, J., dissenting.)

This case was decided by the court In Banc.

Writ of error to the Circuit Court for Citrus county.

The facts in the case are stated in the opinion of the court.

*R. A. Burford, E. K. Foster* and *J. B. Whitfield,* for Plaintiff in Error;

*T. P. Lloyd,* for Defendants in Error.

CARTER, J.

This cause was duly considered by Division B of the court, and a difference of opinion among its members having arisen as to certain questions involved, the cause was referred to the court *in banc* for decision, and in the early part of the present term the court *in banc* disposed of the case by a judgment of affirmance without written opinion. A petition for a rehearing was filed in due course, which has been duly considered, and in view of the importance of some of the questions involved, the court deems it proper, in disposing of the petition, to file this written opinion expressing its views upon the questions embraced in the assignment of errors.

On February 1st, 1895, defendants in error began an action against plaintiff in error in the Circuit Court of Citrus county, claiming damages for failure of defendant to remove its track, build a side track and construct a depot. At the trial plaintiffs waived their claim for damages for failure to construct side track and depot, and ob-

tained judgment for $15,000 damages on account of failure to remove track.

The summons was served upon a business agent of defendant resident in Citrus county, the sheriff stating in his return that the president, vice-president, treasurer, cashier, secretary, general manager and directors were absent from and could not be found in Citrus county. Defendant entered its special appearance for the purpose, as stated, of contesting the service and the jurisdiction of the court, and in pursuance thereof filed a paper stating that it contests the jurisdiction of the court upon five specified grounds relating to the sufficiency of the sheriff's return of service, and concluding as follows: "Wherefore defendant, in pursuance of its special appearance and its objections to jurisdiction and the service of process as above set forth, here moves the court to quash the writ in said cause and abate the action." The court denied the motion, and such ruling constitutes the basis of the first assignment of error. The court ruled correctly upon this motion. The motion was to quash the writ and abate the action—not to quash the service or return of service. A defect in the service or sheriff's return constitutes no ground for quashing the writ or abating the suit. Tidwell v. Witherspoon, 18 Fla. 282, text 286.

The declaration, filed March 4th, 1895, so far as it claims damages for failure to remove track, alleged that on May 26th, 1891, and prior thereto, plaintiffs were in possession and absolute owners in fee simple of certain lands therein described containing one hundred and twenty acres, more or less, situated in said county; that on said day and at several times prior thereto defendant made application to and requested plaintiffs to grant and convey to it a certain parcel of said described land one

hundred feet in width and runing across same for a right
of way for the railroad defendant was then building and
constructing; that on said day at the frequent solicita-
tions and requests of defendant, and for the consideration
thereinafter set out, plaintiffs made and delivered to de-
fendant a certain deed in writing conveying to it a strip
or parallelogram of land one hundred feet in width over
and upon the above described land for the right of way of
its railroad and upon which strip or parallelogram of
land defendant constructed and builtits railroad andupon
which it maintains and keeps a railroad track upon which
it runs and operates engines and cars daily; that the con-
sideration moving plaintiffs to make and deliver to de-
fendant said deed conveying said right of way was the
promises, agreements, undertakings and covenants made
in writing at the time aforesaid and before taking posses-
sion of said strip of land to and with plaintiffs as follows:
that at the time of making and delivering said deed de-
fendant had notice and knowledge that in and upon said
strip there wese deposits of valuable phosphate rock and
defendant then and there promised, agreed, undertook,
engaged and covenanted to and with plaintiffs that when
the latter desired to mine and remove the phosphate rock
from said strip of land that defendant upon sixty days'
notice in writing given by plaintiffs' to defendant that
the former desired to mine said land, the defendnat cor-
poration should remove its railroad track to adjacent or
adjoining lands, defendant reserving the right to move
said railroad track to original line after plaintiffs had
removed the phosphate rock; that said promise, agree-
ment, undertaking, engagement and covenant made by de-
fendant with plaintiffs and as the consideration for gran-
ting said right of way are in writing and  incorporated
in the deed granting and conveying said right of  way;.

that on March 11, 1894, plaintiffs gave defendant the six-
ty days' notice in writing, stating therein that plaintiffs
desired to commence mining at the expiration of said
time on said strip of land and lands adjacent; that
defendant acknowledged receipt and service of said no-
tice; that plaintiffs at the expenditure of much time and
money made preparations to commence mining the phos-
phate rock on said strip of land and lands adjacent, and
were proceeding to mine said rock and were procuring ma-
terial for mining and making negotiations for machinery,
such as engines and washers, to commence mining on said
strip of land and lands adjacent; that notwithstanding
such notice given by plaintiffs defendant neglected and re-
fused at the expiration of the sixty days stated in the no-
tice and still neglects and refuses to remove its railroad
or any part of same from said strip or any part of the
land; that defendant had broken its aforesaid promise,
agreement, undertaking, engagement and covenant made
as aforesaid, whereby plaintiffs had been hindered, ob-
structed and deprived of the use, enjoyment and profits
of the land aforesaid, and hindered, delayed and obstruct-
ed in mining and removing from said land the valuable
phosphate rock deposited in and upon the same, and from
such misfeasance, nonfeasance and breaking of promise,
agreement, undertaking, engagement and covenant on the
part of defendant and other wrongs and injuries done
plaintiffs by defendant in manner and form aforesaid
plaintiffs have suffered sustained and claim damages in
the sum of $75,000.

The defendant demurred to the declaration, noting
many points of law to be argued. The demurrer was over-
ruled, and the ruling is made the basis for the second
assignment of erros. Under this assignment it is argued
that the declaration does not sufficiently allege the man-

ner in which plaintiffs were damaged, the elements that fix the amount of damage, or the amount of phosphate to be mined, nor that it was possible for defendant to comply with the notice to remove tracks, nor that the notice was in accordance with the terms of the deed, nor that a place was designated to which defendant should move the track. It is also argued under this assignment of error that plaintiffs had mistaken their remedy, it being contended that the proper remedy was a proceeding to have the deed set aside or to compel fulfillment of the conditions upon which it was made.

It appears to the court that the action is properly brought for damages consequent upon breach of the defendant's agreement to remove its track set up in the declaration; that the character of plaintiffs' damages are sufficiently stated without naming the amount of phosphate to be mined; that the notice given was sufficient under the terms of the agreement alleged, and that it was not necessary to allege that it was possible for defendant to comply with the notice, nor to designate in the notice a place to which the track was to be removed, as that was a matter for the defendant to determine for itself. The declaration is sufficient as against the objections urged, and the second assignment of error is not well taken.

Defendant pleaded not guilty, *non est factum*, performance, *non damnificatus*, insufficient notice to remove track, want of good faith on the part of the plaintiffs in giving the notice; that plaintiffs voluntarily withdrew the notice given by them, and that plaintiffs began mining on the land beyond the limits of the right of way, but finding it unprofitable, abandoned same before commencement of suit, at which time the excavations for mining had not approached sufficiently near the track to interfere

with such excavations and the removal of phosphate. Issue was joined on these pleas.

At the trial plaintiffs, over defendant's objections, introduced in evidence a document as follows:

State of Florida, Citrus County:  Know all men by these presents that Martin V. B. Van Ness and Annie L. Van Ness, his wife, of the county of Citrus, in the State of Florida, parties of the first part, for and in consideration of the sum of one dollar to them in hand paid by the Silver Springs, Ocala and Gulf Railway Company, a corporation of the State of Florida, party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the party of the second part a strip or parallelogram of land for its railroad right of way, and their necessary railroad purposes, one hundred feet in width at and near whatever point cr points the said party of the second part may see proper to locate the same of, in, upon, over, through and across the following described land, situate lying and being in Citrus county, in the State of Florida, particularly described as follows:  The southeast quarter of the southwest quarter of section thirty-six (36), township eighteen (18) south, range nineteen (19) east, and the northeast quarter of the northwest quarter and the northwest quarter of the northeast quarter of section one (1), ownship nineteen (19) south, range nineteen (19) east.  Provided that should there be valuable phosphate beds or deposits along the aforesaid located line of survey, and the first party desire to mine, operate and remove said deposits of phosphate, then the said party of the second part shall upon sixty days' prior notice in writing remove said track of railroad to adjacent or adjoining lands, and the said sec-

ond party shall have the right to change such track of railroad to original line after aforesaid deposits of phosphate shall have been removed. The party of the second part agrees to construct necessary side track for the removal of phosphate taken from mines on the foregoing described lands, which mines are adjacent to said track of railroad and being operated by party of first part or assigns, said side track to be constructed without expense to party of first part, said way as aforesaid shall be as aforesaid one hundred feet wide and shall be located as aforesaid by party of the second part, its successors and assigns, and it shall be lawful for the party of the second part, its successors and assigns and all and every person for its benefit and advantage at all time hereafter, to construct its railroad and appurtenances upon, and to use, pass and repass with and without property and effects through and over its railroad lately surveyed and located by the party of the second part in, upon, over, through and across the same. And the said party of the second part, its successors and assigns is hereby granted and shall have the right and privilege, in consideration aforesaid, and in consideration of its constructing and operating its railroad, to go beyond the limits of said one hundred feet or way, hereby granted and conveyed, to drain said way and perpetually to keep the same drained by necessary drains or ditches over and across any adjacent lands which may be owned by said party of the first part. The party of the second part further agrees to maintain a station upon the aforesaid described lands, and parties of the first part hereby granting and donating sufficient land for such purpose. And the parties of the first part hereby covenants and agrees not in any manner to disturb, hinder or molest the party of the second part, its

successors or assigns, servants, agents or employes in use and enjoyment of said way and privileges. To have and to hold the above granted premises and privileges unto the said party of the second part, its successors and assigns against all and every person or persons lawfully claiming or to claim the same by, through or under the parties of the first part, their heirs, executors, administrators or assigns. Provided, however, that if the party of the second part, its successors or assigns shall not within six months from the date hereof locate, grade and tie its railroad over, through or across the said above mentioned or described premises, then this grant and conveyance to be wholly void and of no effect. In witness whereof the parties of the first part have hereunto set their hands and affixed their seals this 26th day of May, A. D. 1891.

MARTIN V. B. VAN NESS (Seal.)

ANNIE L. VAN NESS. (Seal.)

Signed, sealed and delivered in presence of as witnesses,

L. R. EICHENLAUB,

E. J. VAN NESS.

To this instrument was attached a proper acknowledgement on the part of Annie L. Van Ness relinquishing all her rights, interests, title, claim to dower or any other claim, executed before an officer, separate and apart from her husband. The ruling admitting this deed in evidence is the basis for the third assignment of error. The only contention made under this assignment is that the clause beginning "provided that," immediately following the description of the property in the deed, properly construed is a condition subsequent for breach of which the plaintiffs might re-enter, and not a covenant or agreement on the part of defendant to remove its tracks for breach of

which an action for damages will lie. The clause in question, being form a proviso, possesses some of the attributes appropriate to a limitation, reservation or condition subsequent, but looking to the language of the entire deed and the evident intent and purpose of the parties, the court is of opinion it is neither, but that it is an agreement on the part of the defendant in the nature of a covenant, whereby the defendant by its acceptance of the deed and entry into possession under it, bound itself to remove its tracks under the circumstances therein stated, and upon which an action for damages, for failure to move its tracks, lies.

When the grantee accepts a deed and enters into possession of the land conveyed, he is deemed by such acts to have expressly agreed to do what it is stipulated in the deed he should do, even though he did not sign the deed. 2 Devlin on Deeds (2nd ed.), section 940a, Hickey v. Railway Company, 51 Ohio St. 40, 36 N. E. Rep. 672; Maine v. Cumston, 98 Mass. 317; Hutchinson v. The Chicago & Northwestern Railway Company, 37 Wis. 582; Rathbone v. Tioga Navigation Company, 2 W. & S. (Pa.) 74. Whether under such circumstances an action of covenant may be maintained against the grantee, we do not now determine, as we do not construe the declaration in this case to declare in covenant, but upon the agreement alleged to be incorporated in the deed. The question whether a particular provision in a deed is to be construed as an exception, limitation, reservation, condition subsequent or a covenant, is often one of great difficulty, but there are certain general rules which, when applied to the present case, enables the court to say that the clause in question is promissory in character, and not a condition the nonperformance of which will forfeit the estate. Where the

language used is ambiguous and may import either a condition or a covenant, it will be construed to be the latter in preference to the former. The entire instrument and the object and purpose of the grant will be looked to in order to ascertain the real intent of the parties, and the instrument will be construed most favorably to the grantee so as to avoid a forfeiture of the estate granted. Elyton Land Company v. South & North Alabama Railroad Company, 100 Ala. 396, 14 South. Rep. 207; Woodruff v. Woodruff, 44 N. J. Eq. 349, 16 Atl. Rep. 4; Stidwell v. St. Louis and Hannibal Railway Company, 39 Mo. App. 221; Ashton v. Stock, L. R. 6 Ch. Div. 719; Hoyt v. Kimball, 49 N. H. 322; Post v. Weil, 115 N. Y. 361, 22 N. E. Rep. 145; 3 Elliott on Railroads, section 945.

The deed contains another proviso at the end of which, in express terms, declares that it is to be void if certain conditions are not performed, whereas the clause we are construing contains no such provision, nor does it contain any language authorizing a re-entry by the grantors if the tracks are not removed, nor denying to the grantee or securing to the grantors the right of possession in case of failure to remove the track upon notice. It is quite evident that the parties did not intend a forfeiture of the defendant's rights in the entire right of way granted, or even in that part covering phosphate deposits, because the right to remove the track to the original line after the removal of the phosphate is expressly recognized. The right of way granted was to extend through three forties of land—at least half a mile—and, aside from the clause in question, the perpetual use of such right of way was secured to the company if the road was constructed within a limited time, which the declaration alleges was done, and which is not denied by the pleas. The clause has reference merely to mining rights, and of course has no ap-

plication to any portion of the right of way not over phos-
phate deposits. The clause does not reserve to the gran-
tors the right to mine regardless of the railroad's occupa-
tion of the right of way, nor to disturb the company's sur-
face right or right to support over the phosphate beds
upon giving notice, nor does it provide that the failure
to remove the tracks upon notice shall entitle the gran-
tors to re-enter or work a forfeiture of the company's
right to its right of way or the portion covering phos-
phate beds. The clause does not either by express lan-
guage or by necessary implication declare that such re-
sults shall follow a failure to remove the track upon no-
tice, but evidently proceeds upon the theory that the
agreement to remove the tracks will be performed. The
clause certainly contemplates that the tracks shall be re-
moved before any mining shall be done that will endan-
ger the railroad, and it was to secure such removal that it
appears to have been inserted. The rule is that where
one sells a right of way or a parcel of land, reserving the
minerals, with a reservation of the right to mine, the lat-
ter right must be so exercised as not to undermine the
surface support or let down the tracks, unless that right
is reserved by express words or by necessary implication.
The court must be able to see clearly from the language
used that the right reserved was to extend to letting down
the road or undermining the surface support, before the
reservation will be construed to give that power. Bell v.
Earl of Dudley, (1895) L. R. 1 Ch. Div. 182; Hext v. Gill,
L. R. 7 Ch. App. 699; Caledonian Railway Co. v. Sprot,
2 Jur. (N. S.) 623; Dixon v. White, L. R. 8 App. Cas. 833;
Coleman v. Chadwick, 80 Pa. St. 81, S. C. 21 Am. Rep.
93; Williams v. Hay, 120 Pa. St. 485, 14 Atl. Rep. 379;
Robertson v. Youghiogheny River Coal Co. 172 Pa. St.

566, 33 Atl. Rep. 706; Mickle v. Douglas, 75 Iowa, 78, 39 N. W. 198. Under the rules of construction stated there being no absolute reservation of the right to mine regard-less of the presence of the railroad upon the right of way granted, and as the right of way was granted to enable the defendant to perform its public obligations, with no words of forfeiture for failure to remove its tracks, the court is of the opinion that the clause in question is neither a reservation, limitation or condition subsequent, but merely a covenant or promise on the part of defendant to remove its tracks upon the conditions named, for breach of which an action for damages lies. Doe dem. Willson v. Phillips, 2 Bingham, 13; Doe dem. Gardner v. Kennard. 12 Ad. & El. (N. S.) 244; Wheeler v. Dascomb, 3 Cush. 285; Dennison v. Read, 3 Dana (Ky.), 586; Sloan v. Cantrell, 5 Cold. (Tenn.) 571; Bergland v. Frawley, 72 Wis. 559, 40 N. W. Rep. 372. It follows that the court was right in admitting the document in evidence.

Plaintiffs offered in evidence the written notice given to defendant to remove the track which was as follows:

"Arlington, Fla., Mar. 11, 1894.

Thos. C. Hoge, Esq.,
Vice-President Silver Springs, Ocala & Gulf Railroad Company,
56 Wall St., New York City, N. Y.

Dear Sir:—As an executive officer of the said Silver Springs, Ocala & Gulf Railroad Company, we hereby give your company notice to remove the track of said railroad from the phosphate deposits (for the purpose of mining the same) where they occur in the lands enumerated and described in a certain deed of right of way executed by the undersigned on the 26th day of May, A. D. 1891, said lands located in the county of Citrus and State of Florida,

and particularly described as follows, to-wit: the S. E. ¼ of S. W. ¼ of Sec. 36, Township 18, Range No. 19 E; the N. E. ¼ of the N. W. ¼ and the N. W. ¼ of the N. E. ¼ of section No. 1, Township No. 19, Range No. 19. Signed this 11th day of March, 1894.

MARTIN V. B. VAN NESS,
ANNIE L. VAN NESS."

Defendant objected to the inntroduction of the document upon the grounds that it was not such a notice as the deed required, does not state the points from nor to which the track should be moved, and that there was a variance in the contents of the notice. The court overruled the objections and upon the exception taken the fourth assignment of error is based. The ruling here complained of was correct. The notice was in accordance with the requirements of the deed. Properly construed in connection with the deed it requires the company to remove its tracks from the phosphate deposits covered by the right of way only, and the point to which the track was to be removed was a matter to be determined by defendant and not by the plaintiffs. The points from which the track was to be removed were designated in the notice, viz: from the phosphate deposits along the line over the lands conveyed by the right of way deed. If the defendant did not know the precise location of the phosphate deposits, it would have a right to demand that plainntiffs inform it of such location, but it is not claimed that defendant was ignorant of their location or that it ever requested or desired information from plaintiffs as to their location.

The fifth, sixth, seventh and eighth assignments of error are based upon exceptions taken to the admission of evidence. The bill of exceptions, as abstracted, is very meagre in stating the matters upon which these excep-

tions were taken. It fails to set forth such brief statement of the proofs as is necessary to show the propriety or impropriety of the rulings complained of as required by special rule 1, or to show that the matters of fact as serted in the objections were true, and under such circumstances this court is not justified in saying that the court below erred in those rulings.

The ninth, tenth, eleventh, twelfth, thirteenth and fourteenth assignments are predicated upon the refusal of the court to give certain instructions. The bill of exceptions, as abstracted, does not exhibit these exceptions in the manner required by the rule referred to in the preceding paragraph. The evidence upon which one of the instructions was predicated is not set forth at all, and the statements of the evidence upon which the other innstructions were predicated are very imperfect and incomplete, and appear so to be on their face. Several of the instructions attempt to construe written instruments not set forth in the statement of facts, and none of the exceptions are so presented as to enable this court to say that the court erred in refusing any of the instructions complained of.

The court, at the request of plaintiffs, gave the following instruction which was excepted to and is the basis for the fifteenth assignment of error, *viz*: "If you find from the evidence that there was a deed made by plaintiffs to defendant, and the defendant accepted the same deed and had same recorded, and went into possession of the land mentioned in said deed and constructed its road upon said land, it became bound by all the terms, provisions and agreements in said deed." In discussing the admissibility in evidence of the right of way deed, we have

36 R. C.

held that the law is as stated in this instruction, and there was, therefore, no error in giving it.

The court, also at the request of plaintiffs, gave the following instructions: "When two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things from such breach of contract itself or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as the probable result of such breach of it. That the party which is in default, that is, the party who has broken the contract, should make good the damages sustained by his breach of contract which were contemplated, or might reasonably be supposed to have entered into the contemplation of the parties at the time of making the contract. Gains prevented as well as losses sustained may be recovered as damages for breach of a contract, when they can be rendered reasonably certain by evidence and have naturally resulted from breach of contract." These instructions were duly excepted to and constitute the basis for the sixteenth, seventeenth, and eighteenth assignments of error. There was no error in giving these instructions, for they each assert elementary principles applicable to the case at bar.

The nineteenth assignment of error complains that the court erred in giving the seventh instruction of its own motion. The bill of exceptions, as abstracted, sets forth this instruction and shows an exception to it. It states that the instruction "was predicated upon the facts as set forth in the evidence in the case, and contained in the evidentiary bill of exceptions, and upon the facts of

a giving of a deed to right of way." The deed referred to is not set forth, nor is the evidence. The reference to the evidentiary bill is nugatory, this court having decided on more than one occasion that the ordinary bill must state the facts and can not be aided by reference to the evidentiary bill. The predicate of facts upon which the instructions was based is defective upon its face, and the exception now under review is therefore not so presented as to justify this court in saying that the court erred in giving the instruction complained of.

From the evidence it appeared that the land over which the right of way was granted belonged to the plaintiff Martin V. B. Van Ness, and that his co-plaintiff, his wife, had no interest in same other than a right to dower. The twenty-fourth and twenty-fifth assignments of error complain that the court below erred in entering a joint judgment against defendant in favor of both plaintiffs under these circumstances, but this court is of the opinion that the judgment was properly entered in favor of the joint plaintiffs. There was no issue raised as to the right of plaintiffs to recover jointly, and the contract to remove the tract having been made with the plaintiffs jointly, the court is of opinion that recovery could properly be had in the names of the husband and wife.

The remaining assignments of error question the propriety of the ruling refusing the motion for a new trial. This motion was based upon various grounds, among others, that the verdict is contrary to the charge of the court, and to the law and the evidence, and that the damages awarded are excessive. The plaintiffs, notwithstanding the right of way deed, still remained the owners of all the phosphate in the land covered by such right of way, and were entitled to mine it all, provided such mining could

be done without injury to the surface of the right of way, and without letting down the defendant's tracks, but under the construction we have given the deed, plaintiffs could not mine so as to withdraw surface support or let down the tracks until defendant had moved its tracks in compliance with its agreement. As the deed granted defendant a perpetual easement over the land with the right to operate its cars on its track laid on the right of way so granted, the defendant's failure to remove its track deprives plaintiffs perpetually of their right to mine in such a way as to interfere with the defendant's use of the land and of all the phosphate which they might have mined had the track been removed as agreed. While plaintiffs remain the nominal owners of the phosphate, they are perpetually debarred of the right to mine it, and the defendant perpetually enjoys the use of the phosphate as a support for its right of way and track. Attorney-General v. Tomline, L. R. 5 Ch. Div. 750; Mine Hill and Schuylkill Haven Railroad Company v. Lippincott, 86 Pa. St. 468. The measure of plaintiffs' damages is, therefore, the value of the phosphate that could not be mined without letting down the tracks or injury to the surface of defendant's right of way. Mine Hill and Schuylkill Haven Railroad Company v. Lippincott, supra, See, also, Paul v. Cragnaz, 25 Nev. 293, .... Pac. Rep. ...., S. C. 47 L. R. A. 540; Chambers v. Brown, 69 Iowa, 213. From the evidence it appears that there are three deposits of phosphate under the right of way, embracing nearly an acre of ground covered by such right of way. The phosphate beds vary from twelve to eighty feet in depth. The land covering these deposits was robbed, bored and pitted, and excavations were dug to ascertain the extent of the deposits. The witnesses for plaintiffs differed as to the quantity of

phosphate in the deposits, varying in their estimates from ten to thirty thousand tons. There was also much conflict in the evidence as to the value of the phosphate and the cost of mining it, but there is sufficient evidence to sustain the finding of the jury that the value of the phosphate that could not be mined without letting down the tracks or injuring the surface of defendant's right of way was $15,000, and as the verdict has the approval of the trial judge, and there is nothing in the evidence to show that the jury was improperly influenced in rendering it, this court is not justified in setting it aside.

It is insisted that the testimony as to the amount of phosphate upon the right of way is purely speculative and that it is too loose, indefinite and uncertain to form the basis for an award of damages. The court entertains a different opinion. See upon this subject Paul v. Cragnaz, and Chambers v. Brown, *supra*.

The court carefully considered every question which was so presented as to require consideration, and finding no reversible error directed that the judgment be affirmed.

There is nothing suggested in the petition for a rehearing which causes the court to doubt the correctness of the conclusions reached upon the former hearing, and the petition will therefore be denied.

HOCKER, J., being disqualified, took no part in the consideration of this case.

MAXWELL, J., dissenting.

As a qualification to the grant of the right of way to defendant, immediately following the granting clause in the form of a proviso, it is stipulated that if the plaintiffs should desire to mine valuable phosphate deposits there-

on, the defendant upon sixty days' notice in writing should remove its track to adjacent lands, and after the deposits were removed could restore it to its original line. I concur with the majority of the court in regarding this as not constituting a condition subsequent, failure to observe which would work a forfeiture of the land, and in construing it as containing an agreement in the nature of a covenant that the defendant company should remove its track as therein stipulated.

But I think it involves more than this, and operates as a reservation or exception from the grant to the defendant. Without any stipulation or reservation in the plaintiffs' deed to the defendant they would have had the right to mine upon the right of way in such manner as not to interfere with the defendant's enjoyment of its easement, but could not so mine as to remove the subjacent or lateral support to the defendant's right of way. Bell v. Earl of Dudley, (1895) 1 Ch. Div. 182; Smith y. Darby, L. R. 7 Q. B. Cas. 716; Scranton v. Phillips, 94 Pa. St. 15. Therefore, the proviso was inserted as above set forth. For what purpose? Obviously, that the right to mine should be freed from this restriction; and to make the enjoyment of the right complete, the company was required to remove its track from the land.

The construction placed upon this provision of the deed by the majority of the court makes it in effect one that the plaintiffs may so mine as to interfere with the surface support of the right of way if the railroad company upon receiving notice to remove its track shall thereafter by moving it evidence its consent that the enjoyment of its easement may be so impaired, but that if it refused so to consent, the right of the plaintiffs to interfere with any part of the surface or support of the right of way is

lost. But the right of the plaintiffs was fixed by their deed to the defendant, and the defendant by accepting it consented then to this qualification of its right of easement, and its later consent is not essential to fix the plaintiffs' mining right. It was the intention of the plaintiffs to retain their right to mine the whole right of way, and this intention is evidenced as above stated by a proviso to the granting clause of their deed to defendant, and should be construed as excepting or reserving this right from the grant. A grantor of an easement may qualify it as he sees fit. (Ex Parte Miller, 2 Hill, 418); and that which is necessarily implied from language used is as much a part of the contract as if it were expressed. Hudson Canal Company v. Pennsylvania Coal Company, 8 Wall. 276, text 288; United States v. Babbit, 1 Black. 55, text 61.

In England, under the "English Clauses Consolidation Act," where a railroad company makes no compensation to the mine owner after notice of his intention to mine adjacent to or underneath the track, the mining may proceed even if it have the effect of letting down the railroad track. Ruabon Brick and Terra Cotta Company v. Great Western Railway Company, (1893) 1 Ch. Div. 427, and cases cited; 18 Am. & Eng. Ency. of Law (2nd Ed.), 558.

Whether a public policy exists which in the absence of statute would preclude the enforcement of the right to mine where it would entail such consequences to a railroad in the operation of which the public has an interest, as is held to be the case in Mine Hill and Schuylkill Haven Railroad Co. v. Lippincott, 86 Pa. St. 468, it is not necessary now to enquire. The evidence shows that a large part of the phosphate on the defendant's right of

way could have been mined without interfering in any way with the road bed of the defendant, and I do not conceive that such public policy would prevent the mining of this portion of the land.

If we assume, then, that such policy does exist and that it would apply to and prevent the mining of that part of the soil which was necessary for the support of the defendant's track, it would not prevent the mining of the rest of the phosphate on the right of way. This portion of the rock was entirely accessible to the plaintiffs, notwithstanding the defendant's failure to move its track, and they should not recover damages for their failure to take it. The testimony upon which the judgment in this case was based was as to the value of the whole of the phosphate on the right way, and furnishes no basis from which to determine the quantity which could not be mined because of the maintenance of the railroad in its former position. The evidence, therefore, fails to support the verdict or to furnish a predicate for reaching a proper verdict.

Entertaining these views, I dissented from the former decision of the court, and now think the rehearing should be granted.

TAYLOR, C. J., dissenting.

I concur in what is said in the dissent of Judge MAXWELL, but further, I am of the opinion that, in the absence of a statute to the contrary, the feature of the contract sued upon obligating the defendant company to remove its track to enable the plaintiffs to mine phosphate deposits thereunder is void as against public policy; but even if it were not, I think that from the terms of the con-

tract itself, as well as for reasons of sound public policy, the burden was upon the plaintiffs to ascertain *definitely* in advance at what particular point or points they desired to mine the mineral deposits from under the track, and then to give notice to the defendant company to remove its tracks from such point or points so selected, specifying in the notice served, with accurate definiteness and certainty, the particular point or points from which they desired the tracks removed, and until such definite and particular notice was served I do not think the defendant company was under any obligation to remove its track, or that the plaintiffs had any right to recover damage for its failure to do so.